## BEHLES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5904.

Circuit Court of Appeals, Seventh Circuit.

Jan. 4, 1937.

Samuel J. Moran, of Chicago, Ill., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

EVANS, *Circuit Judge.*

Petitioner complains of an affirmance of a determination of a 1926 deficiency income tax amounting to $21,228.12. The alleged deficiency arises out of one item— an alleged taxable gain realized by the taxpayer from the sale of stock in Shoup Company, which was acquired in January, 1913.

The facts are: Petitioner entered Shoup Company's employ in January, 1913. Simultaneously therewith, he entered into a contract * which provided for his acquisition of 25 shares of Shoup stock for $21,550, to be paid for solely out of dividends. The stock was completely paid for in that manner on January 12, 1914. The contract provided that if petitioner should at any time cease said employ, Shoup Company or Shoup would have a sixty day option to purchase the stock at its then book value. Petitioner sold the stock in 1926 for $100,000 cash and 2,500 shares of Wrigley Company stock (valued at $133,750) or for a total of $233,750. This sale was apparently completed with Shoup's approval. The Commissioner deducted from this sum $21,550, which was the amount of dividends applied on the purchase price of the stock, and upon the difference, to-wit, $212,250, computed the taxable gain.

For respondent it is urged that $21,550 should be taken as the 1913 value of the stock, for determining gain, inasmuch as that was the amount actually paid. As its sales price was contracted for within six weeks of March 1, 1913, it would ordinarily be a fair indication of the fair market value of the stock on March 1, 1913.

The Shoup Company was a prosperous company with factories in Brooklyn, New York, Toronto, and Chicago. Mr. Shoup was the only person financially interested in the company besides petitioner. It was because of Shoup's desire to have a capable experienced man in charge of the Chicago end of the business while he was supervising the other factories that petitioner was taken into the business and sold a part of the stock. Doubtless, the desire to keep petitioner actively engaged and financially interested in the company, accounts for the provision respecting payment of purchase price of stock out of dividends and the right of Shoup to repurchase stock at book value in case petitioner withdrew. Petitioner studied the company's books at the time he purchased the stock and concluded the proffered stock had a value of about $200,000. He accepted the proposition submitted to him and did so without "dickering" over the price. Petitioner's salary averaged $5,000 per year with a bonus of $1,500.

There is only one question—an issue of fact—for our determination. What was the value of the Shoup stock interest on March 1, 1913, which petitioner acquired in January, 1913? Perhaps it might be better to state the question thus: Is there evidence to support the finding that the fair market value of this stock interest in March, 1913, was $21,550?

■ Although the final payments were made subsequent to March 1, 1913, we are

* "The undersigned A. D. Shoup has on the date hereof sold to the undersigned Nicholas G. Behles, the attached certificate for twenty-five (25) shares of the capital stock of A. D. Shoup Co., at an agreed price of Twenty-one thousand five hundred fifty Dollars, and it is agreed between the parties as follows:

"The above consideration for the purchase of said shares of stock shall be wholly paid to the said A. D. Shoup from dividends earned on said shares of stock and declared by the Board of Directors of A. D. Shoup Co., and said Nicholas G. Behles assumes no other responsibility or obligation as to the payment of said purchase price than that the dividends declared by the Board of Directors and paid on said shares of stock will be paid to the said A. D. Shoup until the full purchase price has been paid, and for the purpose of enabling said A. D. Shoup to receive such dividends, the said Nicholas G. Behles hereby assigns and transfers to the said A. D. Shoup all dividends that may be declared by A. D. Shoup Co. on the attached stock until the said consideration has been fully paid to said A. D. Shoup, and hereby appoints the said A. D. Shoup, his executors, administrators and assigns, as his attorney in fact, to receive and receipt for all such dividends until said consideration has been fully paid.

"It is further agreed by the said Nicholas G. Behles that if at any time he shall cease to be employed by the said A. D. Shoup Co., the said A. D. Shoup or the said A. D. Shoup Co. shall have the option within sixty days from the date such employment ceases, no matter from what cause, to purchase said shares of stock at its then book value, deducting from such purchase price any sum that may be due on the purchase money, said A. D. Shoup on his part agreeing, subject to the foregoing, that when said stock has been fully paid for by dividends, he will deliver the same to the said Nicholas G. Behles.

"Dated this 15th day of January, A. D. 1913.

"[Signed] Alonzo D. Shoup [Seal]
"[Signed] Nicholas G. Behles [Seal]
"Received Payment in full Jan. 12th, 1914.
"[Signed] A. D. Shoup."

satisfied that petitioner's interest in the stock was *acquired* in January, 1913, and its value as of March 1, 1913, must be ascertained in order to determine petitioner's gains on the sale of the stock for $233,750. Section 204 (b) Revenue Act of 1926 (44 Stat. 14).

█ It is, we think, fair to say that the Government concedes the stock was worth more than $21,550 on March 1, 1913. It is argued however, and the Board so found, that the interest which petitioner then acquired therein was limited to that amount because he could not pay for the stock excepting out of dividends and he could not sell the stock excepting as he first offered it to Shoup for its then book value and because that was the sum which he paid for it.

We are convinced that the Board improperly limited its value to its sale price to petitioner. A reduced price for this stock was part of the compensation which Shoup gave petitioner in order to get him into his organization. Shoup might have given petitioner a higher salary. He might have given him a bonus. He chose to sell petitioner stock at a price below its fair value and at the same time sought to insure petitioner's continued participation in the enterprise by making it impossible for him to pay for the stock except out of dividends and also make sale of the stock unlikely because he attached a condition that sale should be to Shoup and at its then book value in case petitioner ceased to be employed by Shoup. This reduced price was a consideration which petitioner received before March 1, 1913. It did not evidence a lessened value of the stock. It was the consideration for petitioner's entering into the Shoup enterprise and employment.

The true value of petitioner's stock interest in the Shoup Company, as of March 1, 1913, must be accepted in computing the gain rather than the price paid therefor after deducting the value of Shoup's contract of employment. The evidence shows this value was far in excess of $21,550.

█ Doubtless it was less than the fair market value of the stock without restrictions against sale, etc., although we perceive no impairment of value due to the fact that payments were to be made out of dividends only. In fact this might make the stock interest more valuable. As to the resale provision, we think, it clearly lessened the value of this stock. In its most unfavorable aspect, however, no great handicap resulted from the enforced and continued ownership of stock in a company which was paying and continued to pay dividends at the rate of from twenty-five to two hundred per cent. per annum and whose surplus increased from $56,000 in 1912 to $680,000 in 1925 and during which period the capital stock increased from $10,000 to $400,000. We cannot believe that compulsory retention of such stock reduced its value from $200,000 to $21,550. We are unable to find any support for a valuation on March 1, 1913, of $21,550.

█ In this case the price paid for the stock did not evidence value. It was the balance due after deducting the value of petitioner's employment contract. Yet the Board accepted it as conclusive on the question of value. Surely book value must give way when it appears that earnings per year nearly equal the book value of the stock.

The order of the Board of Tax Appeals is reversed with directions to determine value and make findings in harmony with the views here expressed.